## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHN W. ROBINSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-946** |
| **AMERICAN MULTI-CINEMA, INC.** | **SECTION: "G"** |

## ORDER AND REASONS

In this litigation, Plaintiff John W. Robinson ("Plaintiff") brings suit against American Multi-Cinema, Inc. ("AMC").[1] Plaintiff alleges that he was injured after leaving an AMC movie theater when his foot became caught on a bicycle rack, causing him to fall.[2] Before the Court is AMC's "*Daubert* Motion and Motion *in Limine* to Limit Expert Testimony of Ladd P. Ehlinger."[3] Plaintiff opposes the motion.[4] Considering the motion, the memoranda in support and opposition, the arguments made at oral argument, the record, and the applicable law, the Court grants the motion.

## I. Background

On February 21, 2020, Plaintiff filed a petition against AMC in the 24th Judicial District

---

[1] Rec. Doc. 1-2; Rec. Doc. 20-5. Plaintiff originally brought this suit against AMC and Kings Building Maintenance, Inc. ("KBM"). However, on April 1, 2021, the Court granted KBM's unopposed Motion for Summary Judgment, thereby dismissing KBM from this case. Rec. Doc. 47.

[2] Rec. Doc. 20-5 at 2.

[3] Rec. Doc. 25.

[4] Rec. Doc. 27.

Court for the Parish of Jefferson, State of Louisiana.[5] On March 13, 2020, Plaintiff filed an amended petition.[6] On March 19, 2020, AMC removed the case to this Court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332.[7]

Plaintiff alleges that on March 15, 2019, he was exiting a movie theater owned by AMC.[8] Plaintiff claims that he was walking on a sidewalk outside the theater when his foot became caught on the base of a movable bicycle rack, causing him to fall.[9] Plaintiff alleges that an AMC employee had placed the bicycle rack directly behind a fixed bench which blocked the bicycle rack from view.[10] Plaintiff claims that as a result of his fall he suffered injuries to his shoulder and back.[11]

Plaintiff alleges that AMC should be held liable because: (1) AMC placed the bicycle rack behind the bench, creating a dangerous condition that led to Plaintiff's injuries, or (2) AMC knew or should have known that the placement of the bicycle rack behind the bench "presented a foreseeable, unreasonable risk of harm."[12] Plaintiff seeks damages for pain and suffering, emotional distress, mental anguish, medical expense, loss of enjoyment of life, and permanent scarring.[13]

------

[5] Rec. Doc. 1-2 at 3.

[6] Rec. Doc. 20-5.

[7] Rec. Doc. 1.

[8] Rec. Doc. 20-5 at 1.

[9] *Id.* at 2.

[10] *Id.*

[11] Rec. Doc. 1-2 at 5.

[12] Rec. Doc. 20-5 at 2.

[13] Rec. Doc. 1-2 at 5.

On March 9, 2021, AMC filed the instant *Daubert* motion to exclude the first conclusion found in the report submitted by Plaintiff's expert witness, Ladd Ehlinger ("Ehlinger").[14] On March 16, 2021, Plaintiff filed an opposition to the *Daubert* motion.[15] On March 23, 2021, with leave of Court, AMC filed a reply in further support of the instant motion.[16] On March 24, 2021, the Court held oral argument on the instant *Daubert* motion.[17]

## II. Parties' Arguments

### A.   AMC's Arguments in Support of the Daubert Motion

AMC seeks to exclude from Ehlinger's report only his first conclusion, arguing that (i) Ehlinger is unqualified to make the opinion, (ii) the opinion is an irrelevant human factors opinion which will invade the purview of the jury as the information is within the common knowledge of the average juror, and (iii) the opinion is not based on any objective or tested technique.[18] Ehlinger's first conclusion states:

> When people are walking, they scan their environment visually with approximately a 30 [degree] cone of vision (foveal vision), the rotational axis of which varies from level to the horizon and parallel to the ground, to 5 [degrees] to 15 [degrees] down vertically from level about the center of the walker's eye. Because of this semi-autonomous visual activity, objects in the foreground under the cone of vision may not be seen, and thus stumbled upon or tripped upon by the walker. Warning signs, a change of texture, additional lighting, and a change of color are some of the visual devices that are used to call attention to a walker (in their peripheral vision) of a stumbling or tripping hazard. None of these visual devices were present in the area that day. More likely than not, Mr. Robinson didn't see the protruding bicycle rack support on the ground.[19]

---

[14] Rec. Doc. 25.

[15] Rec. Doc. 27.

[16] Rec. Doc. 36-2.

[17] Rec. Doc. 32.

[18] Rec. Doc. 25-5.

[19] Rec. Doc. 27-3 at 3.

AMC first contends that Ehlinger's conclusion constitutes a human factors opinion, for which Ehlinger is not qualified to testify.[20] AMC claims that Ehlinger was offered by Plaintiff as an expert in architecture, not in the field of human factors.[21] AMC alleges that Ehlinger has never testified in the field of human factors and that Ehlinger's only training regarding the cone of vision phenomenon came more than 60 years ago when Ehlinger was enrolled in college courses.[22] AMC asserts that Ehlinger is not a "doctor or medical professional" and has "no background or credentials to offer opinions about all persons' visual activity."[23] AMC further claims that Ehlinger "has never interviewed or spoken to Plaintiff, nor did he have Plaintiff's deposition at the time he rendered his report."[24]

AMC further alleges that Ehlinger's human factors opinion is unreliable.[25] AMC claims that Ehlinger's opinion is "not based on an objective or tested theory or technique" and appears to lack any peer review.[26] AMC contends that in forming his opinion, Ehlinger relied solely on one website, www.hazardcontrol.com, a site whose information has not been "peer reviewed or independently vetted."[27] AMC claims that Ehlinger provides nothing in support of his conclusions concerning whether Plaintiff could or should have seen the bicycle rack behind the

---

[20] Rec. Doc. 25-5 at 3.

[21] *Id.* at 3–4.

[22] *Id.* at 4.

[23] *Id.*

[24] *Id.* at 5.

[25] *Id.*

[26] *Id.* at 6.

[27] *Id.*

bench.[28]

Finally, AMC alleges that Ehlinger's human factors opinion is irrelevant.[29] AMC contends that such opinions will not be useful to the jury because Ehlinger's conclusion is within the common knowledge of the jurors and Ehlinger's proposed testimony will not "better aid their analysis."[30] Therefore, AMC argues that the first conclusion listed on Ehlinger's report should be excluded.[31]

**B.**     ***Plaintiff's Arguments in Opposition to the* Daubert *Motion***

Plaintiff counters that Ehlinger is qualified to testify regarding human factors.[32] Plaintiff points to the following facts to show Ehlinger's qualifications: (i) Ehlinger's Bachelor of Architecture degree in 1964; (ii) Ehlinger's career as a licensed architect in Louisiana starting in 1965; (iii) Ehlinger's architecture licenses in Alabama, Arkansas, California, Florida, Mississippi, and Texas; (iv) Ehlinger's memberships in numerous professional associations; and (v) Ehlinger's continuing education coursework.[33] Plaintiff claims that Ehlinger's extensive background in architecture qualifies him to testify as to human factors because the fields of architecture and human factors overlap.[34] Plaintiff alleges that Ehlinger has "spent the last fifty-five years designing spaces with human factors involving human movement though [sic] the

---

[28] *Id.*

[29] *Id.*

[30] *Id.* at 7.

[31] *Id.* at 8.

[32] Rec. Doc. 27 at 3.

[33] *Id.* at 4.

[34] *Id.*

spaces at the forefront of this process."[35] Therefore, Plaintiff contends that Ehlinger is qualified to opine on the human factors present in the instant case.[36]

Plaintiff further argues that Ehlinger's opinion is reliable.[37] Plaintiff contends that Ehlinger relied on "extensive case materials" in reaching his opinion.[38] Plaintiff claims that the website cited by AMC, www.hazardcontrol.com, was attached to Ehlinger's report "simply to illustrate the cone of vision phenomenon that contributes" to Ehlinger's opinion, and Plaintiff clarifies that the article "did not form the basis of Mr. Ehlinger's methodology.[39] Plaintiff contends that any challenges made by AMC to the reliability of Ehlinger's testimony on human factors should only affect the weight given to the testimony, not its admissibility.[40]

Finally, Plaintiff alleges that Ehlinger's opinion regarding human factors is relevant.[41] Plaintiff concedes that courts have previously excluded testimony from human factors experts specifically concerning the adequacy of warnings but argues that Ehlinger's conclusion touches instead on the lack of warning signs at the location of Plaintiff's injuries, "an entirely different analysis that falls squarely within Mr. Ehlinger's expertise as an architect, not within the common experience of the average juror."[42]

---

[35] *Id.*

[36] *Id.*

[37] *Id.* at 5.

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.* at 6.

[42] *Id.* at 6–8.

C.      *AMC's Arguments in Further Support of the* **Daubert** *Motion*

In reply, AMC reiterates that Ehlinger is not qualified to testify regarding human factors.[43] AMC contends that Ehlinger "does not hold himself out as a human factors expert" and argues that "[s]imply because an issue comes up in an individual's line of work does not make the witness qualified to offer scientific, technical, or other specialized knowledge about that issue to a jury."[44]

AMC next argues that Ehlinger's conclusion is unreliable.[45] AMC alleges that Ehlinger fails to provide "any explanation of his methodology."[46] AMC claims that "Ehlinger's human factor[] opinion[] [is] not based on any objective or tested theory or technique; there is no indication the opinion[] ha[s] been subjected to peer review and publication; there is no known error rate; and there is nothing to show whether the theory or technique used to develop the opinion is generally accepted within the relevant community."[47]

Finally, AMC contends that Ehlinger's conclusion is irrelevant.[48] AMC again claims that Ehlinger's proposed testimony "invades the province of the jury, whose members have the common understanding to determine whether a warning was needed in this case."[49] Thus, AMC argues that Ehlinger's testimony regarding human factors should be excluded.[50]

---

[43] Rec. Doc. 36-2 at 1.

[44] *Id.*

[45] *Id.* at 2.

[46] *Id.*

[47] *Id.* at 3.

[48] *Id.*

[49] *Id.* at 4.

[50] *Id.*

### III. Legal Standard

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[51] Rule 702, which governs the admissibility of expert witness testimony, provides that an expert witness "qualified . . . by knowledge, skill, experience, training or education," may testify when "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[52] For the testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony [must be] based on sufficient facts or data,

(2) the testimony [must be] the product of reliable principles and methods, and

(3) the expert [must reliably apply] the principles and methods to the facts of the case.[53]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable."[54] The court's gatekeeping function thus involves a two-part inquiry into reliability and relevance. First, the court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.[55] The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid.[56]

---

[51] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

[52] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[53] Fed. R. Evid. 702.

[54] *Daubert*, 509 U.S. at 597; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

[55] *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

[56] *See Daubert*, 509 U.S. at 592–93.

The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[57]

In *Daubert*, the Supreme Court identified a number of factors that are useful in analyzing reliability of an expert's testimony: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community.[58] In *Kumho Tire Co. v. Carmichael*, the Supreme Court emphasized that the test of reliability is "flexible" and that *Daubert*'s list of specific factors does not necessarily nor exclusively apply to every expert in every case.[59] The overarching goal "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[60]

The court must also determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence—in other words, whether it is relevant.[61] The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

---

[57] *See id.* at 590.

[58] *See id.* at 592–94.

[59] *Kumho Tire*, 526 U.S. at 142; *see also Seatrax*, 200 F.3d at 372 (explaining that reliability is a fact-specific inquiry and application of *Daubert* factors depends on "nature of the issue at hand, the witness's particular expertise and the subject of the testimony").

[60] *Kumho Tire*, 526 U.S. at 152.

[61] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

evidence."[62]

A court's role as a gatekeeper does not replace the traditional adversary system,[63] and "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[64] As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[65] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[66]

### IV. Analysis

At oral argument, the parties agreed that Ehlinger would not testify as to the last sentence of his first conclusion, specifically: "[m]ore likely than not, Mr. Robinson didn't see the protruding bicycle rack support on the ground." However, AMC still seeks to exclude the remainder of Ehlinger's first conclusion. AMC contends that (i) Ehlinger is not qualified to testify as to his first conclusion, (ii) Ehlinger did not rely on reliable methodology in forming his first conclusion, and (iii) Ehlinger's first conclusion is irrelevant. The Court addresses each argument in turn.

### A.    Qualifications

AMC first argues that Ehlinger is unqualified to testify regarding human factors because

---

[62] Fed. R. Evid. 401.

[63] *See Daubert*, 509 U.S. at 596.

[64] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

[65] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[66] *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir.1996) (internal citations and quotation marks omitted).

Ehlinger's experience and education is in architecture, not human factors.[67] AMC points out that Ehlinger is "not a doctor or a medical professional" and "has no background or credentials to offer opinions about all person's visual activity, and certainly no expertise to state precisely how that Plaintiff visualizes objects as he walks."[68] AMC further asserts that Ehlinger "has never interviewed or spoken to Plaintiff, nor did he have Plaintiff's deposition at the time he rendered his report."[69]

In response, Plaintiff points to Ehlinger's education and extensive professional career.[70] Plaintiff contends that Ehlinger's prior education and experience in architecture is directly relevant to this case because of the "interplay of human factors with architecture."[71] Plaintiff claims that Ehlinger "has received specialized education with regards to the cone of vision," including coursework during his freshman year of college.[72]

Ehlinger is qualified to testify as an architect. He is a registered architect in six states.[73] He has a Bachelor of Architecture degree and is a member of multiple architecture-related professional associations.[74] He has worked as an architect for over five decades.[75] In recent years, Ehlinger has enrolled as a student in dozens of continuing education courses based in the field of

---

[67] Rec. Doc. 25-5 at 3.

[68] *Id.* at 4–5.

[69] *Id.* at 5.

[70] Rec. Doc. 27 at 4.

[71] *Id.*

[72] *Id.*

[73] Rec. Doc. 27-1.

[74] *Id.* at 1–2.

[75] *Id.* at 9–10.

architecture.[76] Additionally, Ehlinger has taught numerous continuing education courses on the study of architecture.[77] He has been accepted as an expert in architecture in three states, including Louisiana, and in three federal courts.[78] Ehlinger has acted in an expert capacity in over 150 cases.[79]

Despite this expertise in architecture, however, Plaintiff has failed to show that Ehlinger is qualified to testify regarding human factors. While Plaintiff points to coursework Ehlinger completed his freshman year of college as proof of his qualifications, Ehlinger graduated from college in 1964, over fifty-five years ago. Plaintiff fails to point to any recent training that would be relevant to Ehlinger's proposed testimony. Additionally, Ehlinger's deposition testimony that the study of architecture is necessarily intertwined with the study of human factors is unavailing. While it may be true that "[a]rchitects deal with the design of spaces and the movement of people through spaces,"[80] this fact alone does not qualify Ehlinger to testify as to what people can or can not see as they are walking, including: "[w]hen people are walking, they scan their environment visually with approximately a 30 [degree] cone of vision (foveal vision), the rotational axis of which varies from level to the horizon and parallel to the ground, to 5 [degrees] to 15 [degrees] down vertically from level about the center of the walker's eye" or "[b]ecause of this semi-autonomous visual activity, objects in the foreground under the cone of vision may not be seen,

---

[76] *Id.* at 2–7.

[77] *Id.* at 8–9.

[78] *Id.* at 10.

[79] Rec. Doc. 27-2.

[80] Rec. Doc. 27 at 4.

and thus stumbled upon or tripped upon by the walker."[81]

Given that Ehlinger lacks the necessary qualifications to testify regarding his first conclusion, this Court excludes the first conclusion on Ehlinger's expert report.

## B.   Reliability

Alternatively, AMC claims that Ehlinger's conclusion is unreliable.[82] AMC contends that Ehlinger's only source for his opinions concerning visual activity is "a website called www.hazardcontrol.com" for which "Ehlinger does not offer evidence that the statements on that website have been peer reviewed or accepted by any authority, and Ehlinger offers no other papers, studies or treatises to corroborate these findings that defines certain terms regarding human vision during the walking process."[83] AMC contends that Ehlinger has "apparently done no studies or analysis to confirm the information about a person's visual activity."[84] AMC further argues that Ehlinger has provided nothing in support of his opinions regarding the need for warning signs.[85] AMC asserts that Ehlinger "has never interviewed or spoken to Plaintiff, nor did he have Plaintiff's deposition at the time he rendered his report."[86]

In opposition, Plaintiff argues that Ehlinger's testimony is reliable. Plaintiff points to a list of case materials reviewed by Ehlinger in forming his opinions.[87] Plaintiff contends that Ehlinger "formulated his opinions based upon his education, training, experience, review of the

---

[81] Rec. Doc. 27-2.

[82] Rec. Doc. 25-5.

[83] *Id.* at 6.

[84] *Id.*

[85] *Id.*

[86] *Id.* at 5.

[87] Rec. Doc. 27 at 5.

case materials, and his site inspection" and asserts that there is "nothing unreliable about the methodology that he used to formulate his opinions."[88] Plaintiff also clarifies that Ehlinger did not rely on www.hazardcontrol.com, but simply provided the website to AMC "to illustrate the cone of vision phenomenon."[89]

Ehlinger has failed to provide any information on the methodology he utilized in crafting his first conclusion. Plaintiff makes clear that Ehlinger did not rely on www.hazardcontrol.com.[90] Instead, Plaintiff claims that Ehlinger "formulated his opinions based upon his education, training, experience, review of the case materials, and his site inspection."[91] None of these alleged bases, however, provide any insight into how Ehlinger formulated his first conclusion. Therefore, the Court excludes Ehlinger's first conclusion on the basis of unreliable methodology.

## C.   *Relevance*

Finally, AMC contends that Ehlinger's first conclusion will not assist the jury because "jurors have the knowledge and understanding to make appropriate findings on these issues, and there is no expert opinion or testimony that will better aid their analysis."[92] In opposition, Plaintiff alleges that Ehlinger's conclusion "falls squarely within Mr. Ehlinger's expertise as an architect, not within the common experience of the average juror."[93]

The Court agrees with AMC. If a jury can "adeptly assess [the] situation using only their

---

[88] *Id.*

[89] *Id.*

[90] *Id.*

[91] *Id.*

[92] Rec. Doc. 25-5 at 7.

[93] Rec. Doc. 27 at 8.

common experience and knowledge," an expert's testimony on the matter is unnecessary, irrelevant, and should be excluded.[94] Practically speaking, a jury is capable of making the factual determination of whether or not Plaintiff could see the bicycle rack behind the fixed bench prior to his fall.[95]

Therefore, because the jury "will not benefit" from Ehlinger's first conclusion,[96] the Court excludes it as irrelevant.

### V. Conclusion

Considering the foregoing reasons,

**IT IS HEREBY ORDERED** that American Multi-Cinema, Inc.'s "*Daubert* Motion and Motion *in Limine* to Limit Expert Testimony of Ladd P. Ehlinger"[97] is **GRANTED**. Any testimony regarding the first conclusion listed on Ladd P. Ehlinger's expert report is excluded.

**NEW ORLEANS, LOUISIANA,** this 11th day of May, 2021.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[94] *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990).

[95] *See, e.g.*, *Angelle v. Spartan Offshore Drilling LLC*, No. 17-7707, 2019 WL 3451549, at *4 (E.D. La. July 31, 2019) (Fallon, J.) (excluding expert testimony regarding whether there was sufficient lighting after finding it "not relevant, helpful, or necessary."); *see also Thibodeaux v. Wellmate*, No. 12-1375, 2016 WL 2962822, at *3 (E.D. La. May 23, 2016) (Morgan, J.) ("[t]he adequacy of the warning is a factual issue which the jury can handle without expert help from either side."). While Plaintiff argues that Ehlinger's opinion concerns the *lack* of warning signs at the location of Plaintiff's accident and is therefore distinguishable from cases in which courts have excluded expert testimony regarding the *adequacy* of warnings, this argument is unavailing. The gist of Ehlinger's conclusion is that because the area of Plaintiff's fall lacked warning signs, AMC's warning signs were inadequate to prevent Plaintiff's fall. Thus, it is indistinguishable from an opinion concerning the adequacy of warnings.

[96] *See, e.g.*, *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, No. MDL 07-1873, 2009 WL 2169224, at *4 (E.D. La. July 15, 2009).

[97] Rec. Doc. 25.